UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL BURZYNSKI,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

**DECISION AND ORDER**
13-CV-766S

## I. INTRODUCTION

Plaintiff Michael Burzynski commenced this action against Defendant the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 *et seq*. Plaintiff seeks damages for injuries he allegedly sustained in an automobile collision caused by a United States Postal Service employee. (Docket No. 1.) Currently pending before this Court is Defendant's timely motion for summary judgment dismissing the complaint (Docket No. 24), and Plaintiff's opposition to that motion, together with Plaintiff's motion to extend discovery deadlines, for a stay of decision on Defendant's motion, and an untimely cross-motion for partial summary judgment on the issue of negligence. (Docket No. 27.) For the following reasons, both parties' motions are denied.

## II. BACKGROUND[1]

The present action is the result of a vehicle collision occurring in Buffalo, New York, on October 25, 2011. Plaintiff was stopped at the traffic signal on William Street, at the intersection of Standard Parkway, when a postal vehicle rear-ended his vehicle.

[1] Unless otherwise noted, the facts are not in dispute, and are taken from Docket No. 24-2, Defendant's Rule 56.1 Statement, and Docket No. 28, Plaintiff's Rule 56.1 Statement.

Plaintiff's body did not make contact with the car, except the seatbelt, and he said that he felt a tingling sensation on the left side of his back up to the shoulder and neck area.

Plaintiff was seen at the Emergency Department of Sisters of Charity Hospital approximately two hours after the incident. He reported that he was in a rear-end motor vehicle collision, and that he had pain in the back of his neck and left arm. Plaintiff was discharged with a diagnosis of myofascial cervical strain and a pinched nerve, and prescribed pain medication and a muscle relaxer. X-rays taken four days later, on October 29, 2011, were negative for fractures or acute osseous injury to the thoracic or lumbar spine, but showed degenerative spondylitic changes in the lower cervical spine and some mild inter verterbral disc based and facet anthropathy. An exam that same day noted normal rotation with no pain, no vertebral tenderness in the cervical spine, and mild tenderness in the thoracic and lumbar spine.

On November 22, 2011, Plaintiff began consulting with Dr. Andrew Matteliano. Based on Plaintiff's tenderness during examination, his limited range of motion, and his history of being in motor vehicle collision, Dr. Matteliano diagnosed Plaintiff with flexion extension injury to his cervical, thoracic and lumbosacral spine with "musculoligmentous disruption," meaning there were small tears to the muscles and ligaments around the spine which cannot be seen on imaging studies. Dr. Matteliano prescribed physical therapy, Hydrocodone for pain control, and Flexeril as a muscle relaxant. A magnetic resonance imaging (MRI) scan was conducted of Plaintiff's cervical spine on January 24, 2012. The MRI showed that Plaintiff had bulging discs at multiple levels as well as "disc degenerative changes at multiple levels, spur severely narrowing the left foramen at C4-5." Dr. Matteliano opined that the collision caused Plaintiff's disc bulges, based

on the proximity in time between the motor vehicle collision on October 2011 and the January 2012 MRI showing multiple disc bulges in Plaintiff's cervical spine. Dr. Matteliano also found Plaintiff to have a "permanent partial disability," and recommended that Plaintiff avoid regularly lifting items weighing more than 15 to 25 pounds.

Plaintiff began treatment with Dr. Capicotto, an orthopedic surgeon, on February 2, 2015. Dr. Capicotto ordered MRIs of Plaintiff's neck and spine on February 24 and February 28, 2015. Based on these MRIs, Dr. Capicotto found the same irregularities that have been found previously when examining Plaintiff's spine, including disc space narrowing in his cervical and lumbar spines, multilevel degenerative changes with foraminal stenosis and annular bulges, disc herniations of the lumbar spine, and a herniated disc with partial collapse in the cervical spine. On June 18, 2015, Dr. Capicotto recommended Plaintiff as a candidate for lumbar laminectomy, discectomy, and interbody fusion and posterior fusion. Dr. Capicotto's treatment notes state, without further explanation, that Plaintiff's injury is "100% causally related to the motor vehicle collision of 10/25/2011."

On July 12, 2012, Dr. Donna Miller examined Plaintiff. Plaintiff reported chronic neck and back pain ranging from a seven to nine out of ten in intensity, and related his pain to the motor vehicle collision. Dr. Miller reported limited range motion in Plaintiff's cervical and lumbar spine, but also reported that it "appeared that there was not full effort" by the Plaintiff. Dr. Miller diagnosed Plaintiff with chronic neck and low back pain, and found he had a mild to moderate limitation lifting, bending, and carrying.

On August 13, 2014, Plaintiff was examined by Dr. John Leddy, Defendant's

medical expert. Dr. Leddy also reviewed the other available treatment notes, deposition testimony, and imaging. Dr. Leddy opined that Plaintiff did not sustain a serious injury as a result of the October 25, 2011 collision, and instead sustained only temporary cervical and lumbar muscle strains. Dr. Leddy concluded that Plaintiff fully recovered from the temporary soft tissue muscle strains which he sustained as a result of the collision, and that any ongoing pain is a result of pre-existing degenerative changes to his back and spine consistent with Plaintiff's age and history of heavy tobacco use. Dr. Leddy also noted Plaintiff's inconsistent performance during his examination, specifically, when asked to move his cervical and lumbar spines as part of the examination, Plaintiff moved only a few degrees, but Dr. Leddy observed Plaintiff exhibiting a greater range of motion when his spine was not being examined.

Plaintiff claims the following injuries, *inter alia*, were sustained as a result of the incident: neck and back pain; cervical, thoracic, and lumbar spine sprain and strain; spinal musculoligamentous disruption; left extremity numbness and tingling; diminished cervical and lumbar range of motion; multi-level cervical disc bulges, annular tears and foraminal stenosis; sleep disruption; and limited ability to perform normal daily functions.

## III. DISCUSSION

1. Plaintiff's Motions Under FRCP 56(d) and 16(b)

Plaintiff seeks to extend the expert discovery deadline in the case management order pursuant to Federal Rule of Civil Procedure ("FRCP") 16(b), and to stay decision of the summary judgment pending completion of that discovery under FRCP 56(d),[2] contending that he is unable to appropriately respond to Defendant's motion for

[2] Although Plaintiff's Motion refers to FRCP 56(f), this Court construes the motion as having been brought under 56(d). As Defendant notes, FRCP 56(f) was renumbered as 56(d) in 2010. (See Docket No. 29 at 5.)

summary judgment without expert evidence from Dr. Capicotto, a treating physician.

The relevant Case Management Order was put in place on January 13, 2014, setting deadlines for expert disclosure on December 15, 2014, expert depositions on April 15, 2015, completion of discovery on June 1, 2015, and filing of dispositive motions on July 15, 2015. (Docket No. 11.) On April 15, 2015, Magistrate Judge Schroeder granted Defendant's timely motion for extension, extending the expert deposition and completion of discovery deadlines to July 1, 2015, and leaving the July 15, 2015 dispositive motion deadline in place. (Docket No. 21.)

Plaintiff served his expert disclosure, listing treating physician Dr. Matteliano, on December 14, 2015. Plaintiff began treatment with Dr. Capicotto, a surgeon, on February 2, 2015, after expiration of the expert disclosure deadline. (See Docket No. 24-3, Exh. H.) On June 18, 2015, Dr. Capicotto examined Plaintiff and recommended him as a candidate for lumbar surgery. (Id.) Defendant timely filed its dispositive motion on July 15, 2015, citing to Dr. Capicotto's treatment records and his recommendation for surgery. (Id.) Plaintiff moved to amend the Case Management Order on August 17, 2015, the date on which his opposition to the motion for summary judgment was due. (Docket No. 27.) Plaintiff contends that "[i]t has become evident that Dr. Capicotto's testimony is material and necessary in this action and Plaintiff now seeks an extension of the current Case Scheduling Order to allow for disclosure of Dr. William Capicotto as an expert in this action and to further allow the defense the ability to take Dr. Capicotto's deposition, if requested." (Docket No. 27-2 ("Pl.'s Mem. of Law") at 1.)

FRCP 16(b) provides that "the Court's scheduling order 'shall not be modified

except upon a showing of good cause.'" Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (quoting Fed. R. Civ. P. 16(b)). "A finding of good cause depends on the diligence of the moving party." Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir. 2003). "While a court in its discretion may consider other factors, such as prejudice to the non-moving parties, diligence remains the central focus of the court's inquiry." Desir v. Austin, No. 13-CV-00912 DLI VMS, 2015 WL 4546625, at *2 (E.D.N.Y. July 28, 2015) (citing Armstrong Pump, Inc. v. Hartman, No. 10CV446S, 2013 WL 6230110, at *5 (W.D.N.Y. Dec. 2, 2013)). In this case, Plaintiff had the opportunity to disclose Dr. Capicotto at any point between February 2, 2015, when the Plaintiff first treated with him, and July 1, 2015, when the extended close of discovery deadline came, without any significant prejudice to Defendant. Even assuming that Plaintiff did not realize that Dr. Capicotto's evidence was material until June 18, 2015—the date on which Dr. Capicotto raised the possibility of surgery—Plaintiff could have sought an extension of the expert disclosure deadline prior to the close of discovery and prior to Defendant's filing of its dispositive motion. However, Plaintiff made no effort to amend his disclosures or extend deadlines until more than six months after he began treatment with Dr. Capicotto, and nearly two months after surgery was discussed. Under these circumstances, Plaintiff fails to establish that the applicable deadlines could not, despite diligence, be met.

Nor has Plaintiff shown that the requested discovery would give rise to a genuine issue of material fact warranting a stay of Defendant's summary judgment motion. Rule 56(d) permits a party to oppose a motion for summary judgment on the grounds that it needs discovery where it "shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The affidavit must set forth: "'(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" Graves v. Corr. Med. Serv., No. 11-CV-1005A M, 2015 WL 1823456, at *3 (W.D.N.Y. Apr. 22, 2015), aff'd, No. 15-1621, 2016 WL 3472602 (2d Cir. June 24, 2016) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003)). Where the party opposing summary judgment fails to present the required Rule 56(d) affidavit or declaration, the "application fails on this basis alone." Cross v. State Farm Ins. Co., 926 F. Supp. 2d 436, 446 (N.D.N.Y. 2013) (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)). Merely referencing the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(d) affidavit. Paddington Partners, 34 F.3d at 1137. Here, Plaintiff has not presented a proper affidavit or declaration in support of his request for discovery,[3] and thus his Rule 56(d) application fails to meet the procedural barrier for consideration. Cross, 926 F. Supp. 2d at 446; see also Young v. Benjamin Dev. Inc., 395 F. App'x 721, 723 (2d Cir. 2010) (finding that "the district court committed no error [in denying a Rule 56(d) motion] because [the non-moving party] failed to file an affidavit setting forth the essential facts he sought to discover").

Even if Plaintiff had complied with the procedural requirements, he has not sufficiently justified the need for the requested discovery. "[T]he trial court may properly

[3] Indeed, Plaintiff's only support for this motion is his memorandum of law, which was submitted unsigned.

deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery." Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989); Burlington Coat Factory Warehouse Corp. v. Esprit de Corp, 769 F.2d 919, 927 (2d Cir. 1985) (determining that the district court did not abuse its discretion where nonmoving party "had ample time in which to pursue the discovery that it now claims is essential"). The trial court may also deny additional discovery "if the request is based only on speculation as to what potentially could be discovered . . . ." In re Dana Corp., 574 F.3d 129, 148-49 (2d Cir. 2009) (citations and internal quotation marks omitted); see also Crandall v. David, 457 F. App'x 56, 58 (2d Cir. 2012) ("We review a district court's denial of a motion for further discovery under Fed. R. Civ. P. 56(d) for an 'abuse of discretion' and will not reverse where a plaintiff has failed to show how the facts sought are reasonably expected to create a genuine issue of material fact." (quoting Paddington Partners, 34 F.3d at 1137-38)).

Here, Plaintiff has had the opportunity to discover information necessary to support his claims, and to take expert depositions, since the entry of the Scheduling Order on January 13, 2014. And although Dr. Capicotto did not recommend surgery until June 18, 2015, Plaintiff had nearly four weeks to seek an amendment of the Scheduling Order before the July 15, 2015 dispositive motion deadline. Plaintiff has not shown any excusable neglect for his failure as required by FRCP 6(1)(B)(1). Nor has Plaintiff provided any concrete description of what Dr. Capicotto's testimony would provide that is not already included in the record through his treatment notes. Accordingly, Plaintiff's motions under FRCP 16(b) and 56(d) are denied.[4]

[4] This Court notes that Plaintiff failed to take proper care with his motions and supporting papers in several respects. In addition to failing to meet the procedural barrier of filing an affidavit or sworn

2. Cross Motions for Summary Judgment

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) *cert. denied*, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248). Where both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001).

Defendant contends that it is entitled to summary judgment because Plaintiff has not suffered a "serious injury" as defined by New York Insurance Law § 5102(d),[5] and further argues that any injuries suffered by Plaintiff were not proximately caused by the collision. Summary judgment against a plaintiff who seeks recovery under New York

---

statement in support of his Rule 56(d) motion, Plaintiff's memorandum of law periodically refers to the wrong plaintiff ("Ms. Maxwell") and several doctors not otherwise mentioned in this case ("Dr. Cardone" and "Dr. Huckell"). (See Pl.'s Mem. of Law at 6, 7.) Further, several paragraphs are missing from the opinion of Dr. Matteliano submitted in support of Plaintiff's papers. (See Docket No. 27-3 (ending paragraph 12 mid-sentence on unnumbered page 3 and continuing on the next page with paragraph 16.) This Court finds that these omissions and errors, though distracting, do not hinder its ability to reach a conclusion on the present motions.

[5] Defendant's liability under the Federal Tort Claims Act is determined by the law of the state in which the tort occurred. Thomas-Young v. United States, No. 11-CV-930S, 2014 WL 1679474, at *2 (W.D.N.Y. Apr. 28, 2014).

Insurance Law is appropriate when the evidence would not warrant a jury finding that the injury falls within one of the nine statutory categories set forth in New York Insurance Law § 5102(d). See Licari v. Elliott, 57 N.Y.2d 230, 234, 441 N.E.2d 1088, 1090 (1982). Thus, once a defendant establishes a *prima facie* case that plaintiff's injuries are not serious, the burden shifts to plaintiff to demonstrate that he has endured a serious injury. Gaddy v. Eyler, 79 N.Y.2d 955, 956, 591 N.E.2d 1176 (1992). A plaintiff may defeat summary judgment through admissible evidence in the form of sworn affidavits by physicians. Bonsu v. Metro. Suburban Bus Auth., 202 A.D.2d 538, 610 N.Y.S.2d 813, 813-14 (2d Dep't 1994); McLoyrd v. Pennypacker, 178 A.D.2d 227, 577 N.Y.S.2d 272, 273 (1st Dep't 1991).

Plaintiff has also filed an untimely cross-motion for summary judgment on the issue of negligence.

*a. Defendant's Motion for Summary Judgment*

"Under New York's no-fault statutory scheme for automobile accidents, there is no right of recovery for basic economic loss caused by negligence." Chapman v. Verspeeten Cartrage, Ltd., No. 04-CV-84S, 2007 WL 776420, at *3 (W.D.N.Y. Mar. 12, 2007). Such a right arises, however, when the negligence results in "serious injury." Id. To proceed with a claim in New York then, a plaintiff must present objective proof that he or she suffered a "serious injury" as that phrase is defined by New York Insurance Law. See Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197 (2002); N.Y. Ins. Law § 5102(d). Section 5102 of the New York Insurance Law defines the term "serious injury" as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body

> organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

In this case, Plaintiff contends that as a result of the October 25, 2011 vehicle collision, he has suffered a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system," specifically, injuries to his cervical and lumbar spines.[6] "Whether a limitation of use or function is 'significant' or 'consequential' (i.e., important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Dufel v. Green, 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995) (internal citations omitted).

In support of its argument that Plaintiff's injuries do not meet the statutory threshold, Defendant submits the report and declaration of Dr. Leddy, which is affirmed under penalty of perjury. See generally Marsh v. Wolfson, 186 A.D.2d 115, 115-16, 587 N.Y.S.2d 695 (2d Dep't 1992) (a defendant may rely on the unsworn reports of a plaintiff's own physicians or the opinions of other physicians submitted in admissible form to establish entitlement to summary judgment). Dr. Leddy found no acute trauma

[6] Plaintiff failed to oppose Defendant's arguments that summary judgment should be granted as to basic economic loss; significant injury due to permanent loss of use of a body organ, member, function or system; and loss arising under the so-called "90/180" category of serious injury. Accordingly, these claims are deemed to be abandoned. Kovaco v. Rockbestos-Surprenant Cable Corp., No. 15-2037-CV, 2016 WL 4434396, at *11 (2d Cir. Aug. 22, 2016) ("when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims'") (quoting Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014)).

in the MRIs of Plaintiff's neck and spine taken after the October 25, 2011 collision, and opined that Plaintiff sustained only temporary cervical and lumbar muscle strains, from which he fully recovered. (Docket No. 24-3, Exh. K.) Further, Dr. Leddy opined, based on the diagnostic studies in the record, that Plaintiff's pain was caused by pre-existing degenerative changes to his back and spine consistent with Plaintiff's age and history of heavy tobacco use, and were not a result of the October 25, 2011 collision. (Id.) Dr. Leddy also found Plaintiff's movement to be inconsistent in the exam, turning only a few degrees while Dr. Leddy tested his range of motion, but moving with a greater range during the remainder of the examination. (Id. at 2) This observation is consistent with the examination by Dr. Miller, who reported that Plaintiff did not appear to be giving full effort on his exam. (Docket No. 24-3, Exh. K.) Based on the sworn affidavit submitted by Dr. Leddy, this Court finds that Defendant has established a *prima facie* case that Plaintiff's injuries are not serious.

In support of his Opposition to the motion, Plaintiff submits the sworn affidavit of Dr. Matteliano, as well as the Dr. Matteliano's treatment notes. Dr. Matteliano opines that Plaintiff's MRIs show "multiple levels of disc bulge in the cervical spine and C3-4, C4-5, CS-6 and C6-7, degenerative changes at multiple levels, spur severely narrowing the left foramen at C4-5." (Docket No. 27-3 (the "Matteliano Aff.") at ¶ 11.) Dr. Matteliano's opinion and treatment notes show that Plaintiff has consistently exhibited a reduction in range of motion, both in his cervical and lumbar spine, throughout his course of treatment. (Id. at ¶¶ 7-8; see also Docket No. 27-3.) For example, on December 1, 2011, Plaintiff had 60º (right) and 50º (left) rotation in his cervical spine, consistent with a 25% and 37.5% loss of range of motion. (Id.) At that same visit, Dr.

Matteliano also found 30º lumbar flexion and 15º lumbar extension, 67% and 50% losses of range of motion of motion, respectively. (Id.) According to more recent treatment notes from Dr. Matteliano, on April 15, 2015, Plaintiff had 30º of rotation in his cervical spine on both sides, consistent with a greater than 60% loss of range of motion. (Docket No. 24-3, Exh. G.) Dr. Matteliano also found 30º lumbar flexion and 5º lumbar extension, 67% and 83% losses of range of motion of motion, respectively.[7] (Id.) Dr. Matteliano's notes also indicate back spasms, severe low back pain, tenderness in the lumbar and cervical spines, and stiffness. (Docket No. 27-4.) In his opinion, Dr. Matteliano opines, based on the history, objective findings, medical records, diagnostic studies and his examinations, that Plaintiff's injuries to the cervical spine and lumbar spine are causally related to the motor vehicle collision on October 25, 2011. (Matteliano Aff. at ¶ 17.)

Having reviewed the record, this Court finds that there is a genuine issue of material fact as to whether Plaintiff sustained a qualifying injury under New York Insurance Law as a result of the October 25, 2011 collision. Plaintiff's admissible evidence—the affidavit from his treating physician—states that the collision caused a significant restriction in Plaintiff's cervical and lumbar range of motion. That restriction has varied over time, sometimes falling below 25% according to Dr. Matteliano's treatment notes. However, it has generally been greater than 50%, sometimes even reaching 80%. Dr. Matteliano does not rely on Plaintiff's self-reported symptoms alone, instead, his conclusion is supported by objective medical evidence including: (1)

[7] During his examination on June 18, 2015, Dr. Capicotto found a slightly greater range of motion of the cervical spine (50º cervical rotation on both sides, consistent with 37.5% loss of range of motion) and less range of motion for the lumbar spine (20º lumbar flexion and 0º lumbar extension). (Docket No. 24-3, Exh. H.)

Plaintiff's cervical and lumbar MRIs from January 24, 2012, February 24, 2015, and February 28, 2015, which revealed bulging discs at multiple levels, disc space narrowing in the cervical and lumbar spines, multilevel degenerative changes, and a herniated disc with partial collapse; (2) the reduced range of motion in Plaintiff's cervical and lumbar spines, which he exhibited during physical examinations by Dr. Matteliano, Dr. Miller, and Dr. Capicotto; and (3) Plaintiff's candidacy for lumbar surgery. "It has been consistently held that a measure of [a range of motion] limitation, together with an MRI or other formal objective test, is sufficient to create a genuine issue of material fact." Pfeiffer v. Mavretic, No. 04-cv-155, 2007 WL 2891433, at *8 (W.D.N.Y. Sept. 28, 2007); see also Pommells v. Perez, 4 N.Y.3d 566, 577, 797 N.Y.S.2d 380, 830 N.E.2d 278 (2005) (doctor's opinion that plaintiff suffered severe and permanent injuries, supported by measurements of loss of range of motion and an MRI revealing herniated discs, held sufficient to defeat summary judgment); Clervoix v. Edwards, 10 A.D.3d 626, 781 N.Y.S.2d 690 (2d Dep't 2004) (treating chiropractor's affidavit specifying decreased range of motion, along with evidence of herniated and bulging discs confirmed by MRI, held sufficient to defeat summary judgment).

Moreover, this evidence indicates that Plaintiff suffered from the alleged injury from October 25, 2011, until at least the time the motions were filed, and Dr. Matteliano states that Plaintiff is unlikely to fully recover. "Given the level of restriction claimed and the important role the back plays in the activities of daily living, limitations of this duration could be found to constitute a significant limitation." Williams v. Elzy, No. 00 CIV. 5382 (HBP), 2003 WL 22208349, at *9 (S.D.N.Y. Sept. 23, 2003) (citing Nasrallah v. Helio De, No. 96 CIV. 8727 (SS), 1998 WL 152568, at *6 (S.D.N.Y. Apr. 2, 1998)

(evidence that 40% loss range of motion in lumbar region lasted nine months sufficient to create genuine issue of fact); Hayes v. Riccardi, 97 A.D.2d 954, 954, 468 N.Y.S.2d 748, 749 (4th Dep't 1983) (60% loss of range of motion in cervical region lasting for unspecified period between four days and fifteen months sufficient to create genuine issue of fact)).

Defendant also seeks dismissal on the grounds that Plaintiff's injuries are not causally related to the collision, and are instead the result of pre-existing degenerative damage. "[E]ven where there is objective medical proof [of injury], when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate." Pommells, 4 N.Y.3d at 572. "With respect to pre-existing injuries, a defendant moving for summary judgment is required to submit 'persuasive evidence' as to the existence of the plaintiff's pre-existing injuries." Evans v. United States, 978 F. Supp. 2d 148, 164 (E.D.N.Y. 2013) (citations omitted). If the defendant meets this burden, "the burden shifts to the [p]laintiff to come forward with evidence addressing the defendant's claimed lack of causation." Id. (citations and internal quotation marks omitted).

Defendant's evidence is not persuasive in this case. Defendant's expert opines that any injury to Plaintiff's back is a result of degenerative changes unrelated to the collision; Plaintiff's treating physician opines the opposite. Unlike the case law relied on by Defendant, there is no evidence in the record that Plaintiff had previously experienced significant injury or back pain. (See Docket No. 24-1, Def.'s Mem. of Law at 19-20 (citing Dabiere v. Yager, 297 A.D.2d 831, 831-32, 748 N.Y.S.2d 38 (3d Dep't

2002) (granting defendant's motion for summary judgment where plaintiff had sustained several neck or back injuries prior to the collision at issue, including a broken neck); Watson-Tobah v. Royal Moving & Storage Inc., No. 13-cv-7483, 2014 WL 6865713, at *14-15 (S.D.N.Y. Dec. 5, 2014) (granting defendant's motion for summary judgment where expert's opinion that plaintiff's injury and pain predated the collision at issue was corroborated by plaintiff's own testimony). On the contrary, Plaintiff testified that he never injured his back or neck prior to October 25, 2011. (Plaintiff's Rule 56.1 Statement ¶ 132.) Plaintiff also testified that prior to the collision, he never experienced pain in his back and neck, nor did he ever have x-rays. (Id. ¶ 133.) And even if Plaintiff had some amount of pre-existing degenerative disc disease, that alone is not sufficient to show that there is no causal link between the collision and an exacerbation of Plaintiff's condition. See Nasrallah, 1998 WL 152568, at *8 ("the fact that [plaintiff] already had degenerative disc disease does not prevent an accident from causing serious injury by aggravating this condition"); Croisdale v. Weed, 139 A.D.3d 1363, 1364, 32 N.Y.S.3d 399, 400 (4th Dep't 2016) ("although defendants contended in support of the motion that plaintiff's left knee injuries were preexisting and the result of a degenerative condition, they failed to submit evidence establishing as a matter of law that the injuries were entirely preexisting and were not exacerbated by the accident in question" (internal citation and punctuation omitted)).

Defendant seems to argue that the primary basis for rejecting Dr. Matteliano's opinion as to causation is that it contradicts Dr. Leddy's opinion. Such a weighing of facts is inappropriate at this stage. See Linton v. Nawaz, 62 A.D.3d 434, 443, 879 N.Y.S.2d 82, 89-90 (2009), aff'd, 14 N.Y.3d 821, 926 N.E.2d 593 (1st Dep't 2010)

("There is no basis on this record to afford more weight to defendants' expert's opinion and there are no 'magic words' which plaintiff's expert was required to utter to create an issue of fact."); Chase v. Allwai, No. 07-CV-96-JTC, 2010 WL 1133333, at *6 (W.D.N.Y. Mar. 23, 2010) ("[N]ot unexpectedly, [plaintiff's medical expert's] interpretation of the imaging reports is at odds with [defendant's medical expert's] interpretation. However, this court's role at the summary judgment stage is to identify disputed issues of material fact, not to resolve them."). Accordingly, summary judgment must be denied as to whether Plaintiff suffered a significant injury as a result of the October 25, 2011 collision.

*b. Plaintiff's Motion for Summary Judgment*

As discussed in greater detail above, the Scheduling Order in this case set a dispositive motion deadline of July 15, 2015. Plaintiff's motion for partial summary judgment as to negligence was filed on August 17, 2015, without any persuasive reason for the lack of timeliness.

A Court may consider an untimely cross-motion where that motion "seeks summary judgment on the very same claims on which [the timely movant] has moved for summary judgment." Connecticut Indem. Co. v. 21st Century Transp. Co., 186 F. Supp. 2d 264, 269 (E.D.N.Y. 2002). That is not the case here; Defendant's timely motion seeks dismissal based solely on the "serious injury" standard and causation, while making no mention of negligence. Because Plaintiff's cross-motion was not timely filed, and does not overlap with the facts and legal issues under consideration in Defendant's motion, the motion for partial summary judgment on the issue of negligence is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motions to extend discovery deadlines and for a stay of decision on Defendant's motion are denied, as is his untimely motion for partial summary judgment. Defendant's motion for summary judgment is also denied. Plaintiff's claims as to basic economic loss; significant injury due to permanent loss of use of a body organ, member, function or system; and loss arising under the so-called "90/180" category of serious injury are deemed abandoned.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 24) is DENIED;

FURTHER, that Plaintiff's Motions to Extend Discovery Deadlines, for a Stay of Decision on Defendant's Motion, and for Partial Summary Judgment (Docket No. 27) are DENIED.

SO ORDERED.

Dated: October 25, 2016
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge